NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DENNIS JONES, *Appellant.*

No. 1 CA-CR 15-0579
FILED 9-8-2016

Appeal from the Superior Court in Maricopa County
No.  CR2013-003592-002
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Heath Law Firm, PLLC, Mesa
By Mark Heath
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Kenton D. Jones joined.

---

**B R O W N**, Chief Judge:

¶1        Dennis Jones appeals from his convictions and sentences for two counts each of armed robbery and aggravated assault and one count of misconduct involving weapons.  Jones asserts the prosecutor committed fundamental error by improperly commenting on his right not to testify. For the following reasons, we affirm.

## BACKGROUND

¶2        The victims, husband and wife (R.M. and A.A.), pulled into a parking lot to get directions to a party.  After parking, another car, driven by Jones, parked adjacent to the victims.  R.M. noticed a black man was driving the other car, and thought he may be attending the same party, so he walked to Jones's window to ask for directions.  As Jones began giving R.M. directions, Jones's passengers, Carl Barnett and Everette Mills, got out of the car and approached R.M.  Barnett pointed a gun and ordered R.M. to "kneel on the ground," and hand over all of his property, including his wallet, money, cell phone, jewelry, and shoes.  R.M. complied, handing everything to Mills.

¶3        While Barnett held the gun on R.M., Mills approached A.A., still seated in her car with the window closed.  Mills ordered A.A. out of the car and told her to hand over all of her property, including her jewelry, purse, money, cell phone, and shoes.  A.A. also complied. Mills  gave all of the property to Jones, who remained in the driver's seat with window open and the engine running.  The victims were ordered to look away while Mills and Barnett got back in the car with Jones.  Jones told the victims, "You're in the wrong place at the wrong time.  You are alive because you are black." A.A. asked Jones for her cell phone, but he refused.  Jones gave A.A. her purse, with only her identification and makeup inside; all cash and credit cards were gone.  Jones drove away.

**¶4** Shortly thereafter, Jones, Barnett, and Mills were apprehended by police. Some of the victims' property was found in the back seat of Jones's car, along with the gun.

**¶5** Jones testified at his first trial in June 2014; it ended in a mistrial after the jury was unable to reach a verdict. Jones's retrial commenced in September 2014, but he did not testify. The pertinent testimony at the retrial follows. Through an interpreter[1], R.M. testified that as Barnett pointed the gun at him, Mills took his property, and handed it to Jones through the open window. R.M. stated that when Mills handed the property to Jones, Jones "receive[d]" it and "kep[t]" it. Similarly, A.A. testified that after handing her property to Mills, he gave it to Jones through the driver's open window and Jones "grabbed them from [Mills'] hand." Both victims denied telling anyone that night, including police officers, that Jones refused to take the property handed to him by Mills.

**¶6** In contrast, Officer Soliz testified that during her interview with R.M. the night of the robberies, R.M. told her that when Mills attempted to hand the property to Jones, Jones said no, that he could not take it. Officer Soliz acknowledged that R.M. had a thick accent, was talking very fast, and was hard to understand. Officer Pimentel stated that the victims were "scared, frightened," and there was a "language barrier initially."

**¶7** The jury found Jones guilty as charged and the trial court imposed concurrent sentences of 18 years' imprisonment for the armed robbery counts and 12 years' imprisonment for the aggravated assault and weapons misconduct counts. This timely appeal followed.

## DISCUSSION

**¶8** Jones argues the prosecutor improperly commented on his right not to testify by stating in closing argument, "he did not deny taking that property." Because Jones failed to object to the prosecutor's statement at trial, we apply fundamental error review. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Jones thus carries the burden of showing not only fundamental error, but also that he was prejudiced by it. *Id.* at ¶ 20. Fundamental error is error that goes to the foundation of the case, deprives a defendant of a right essential to his defense, and is of such magnitude that he could not possibly have received a fair trial. *Id.* at ¶ 19.

---

[1] R.M. and A.A. moved to the United States from other countries and English is not their native language.

¶9 The right against self-incrimination is fundamental. U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"); Ariz. Const. art., 2, § 10 ("No personal shall be compelled in any criminal case to give evidence against himself[.]"). A prosecutor, therefore, is prohibited from commenting on a defendant's decision not to testify at his trial. *Griffin v. California*, 380 U.S. 609, 612-13 (1965), *see also* Arizona Revised Statutes ("A.R.S.") section 13-117 ("The defendant's neglect or refusal to be a witness in his own behalf shall not in any manner prejudice him, or be used against him on the trial or proceedings."). "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *State v. Ramos*, 235 Ariz. 230, 235, ¶ 13 (App. 2014) (citing *State v. Rutledge*, 205 Ariz. 7, 13, ¶ 33 (2003)).

¶10 As noted above, disputed evidence was presented at trial as to what R.M. told Officer Soliz during the interview shortly after the robberies. R.M. testified that as Barnett pointed the gun at him, Mills took his property, and handed it to Jones through the driver's open window. R.M. stated that when Mills handed the property to Jones, Jones "receive[d]" it and "kep[t]" it. R.M. denied telling anyone that night, including Officer Soliz, that Jones refused to take the property. A.A. also testified that Mills gave her property to Jones through the open driver's window. In contrast, Officer Soliz testified that R.M. told her that when Mills attempted to hand the property to Jones, he said no, that he could not take it.

¶11 Addressing this discrepancy, in her closing argument the prosecutor explained:

> [The victims] both told you from the stand that the defendant is the one who took that property. There [are] conflicting stories because that night Officer Soliz says [R.M.] told me that the defendant said, no, I don't want that property, and that Everette Mills is the one who turned, got in the car with it, and that [Jones] gave back [A.A.'s] purse, her makeup and her I.D. Did not give back the jewelry, the shoes, did not give back the glasses, did not give back cell phones because cell phones are going to get the cops back here immediately. None of that was given. But [the victims] told you, we never said that. *He did not deny taking that property*. He took the property and put it in the car.

. . . .

> You saw [R.M.] and you saw [A.A.] as they testified. Both of them were very firm of, *no, we did not say the defendant denied it.* He took that property. [A.A.] never said that, never told Officer Pimental that the defendant refused it. Her story is that he took that property, he put it in the car and then the other two got back in.

(Emphasis added).

**¶12**          Considering the alleged improper comment in context, we have no trouble concluding that the prosecutor was comparing the victims' testimony to Jones's conduct at the time of the robberies — that Jones did not refuse to accept the property when Mills handed it to him through the open window ("he did not deny taking that property"). The prosecutor's intent would have been crystal clear if she had said "he did not *refuse* the property;" however, her clarification a few seconds later that the victims "did not say that the defendant denied it" and that A.A. never told Officer Pimental that Jones "refused" the property resolves any uncertainty. The prosecutor was not referring to Jones's failure to take the stand and the jury would not have naturally and necessarily perceived it to be a comment on such. *See State v. Fuller*, 143 Ariz. 571, 574-75 (1985) (finding no fundamental error when comments in closing rebuttal reflected prosecutor's opinion that the defense failed to present any positive or exculpatory evidence, and did not specifically refer to defendant's failure to take stand); *cf. Griffin*, 380 U.S. at 610-11 (1965) (finding reversible error when trial court and prosecutor directly commented on defendant's failure to testify; stating "he has not seen fit to take the stand and deny or explain" and the "jury may take that failure into consideration as tending to indicate truth of [] evidence"); *Ramos*, 235 Ariz. at 235, ¶ 12 (finding fundamental error when prosecutor's statements during closing rebuttal directly pointed to defendant's failure to take the stand; "defendants are never gonna get on the stand and say 'I did it. You got me.'").

## CONCLUSION

**¶13** Based on the foregoing, we affirm Jones's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA